# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MARYLAND

| UNITED STATES | : | |
| --- | --- | --- |
| | : | |
| v. | : | Case No. 1:24-CR-00183-DKC |
| | : | 1:20-CR-00084-DKC |
| TURON WILLIAMS, | : | |
| | : | |
| Defendant | : | |

## MOTION TO REOPEN DETENTION HEARING

Turon Williams, the Defendant, by and through Andrew R. Szekely and Gabriel Reyes, Assistant Federal Public Defenders, moves, pursuant to 18 U.S.C. § 3142(f), to reopen his April 17, 2025, detention hearing. In support thereof he states as follows.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about June 4, 2024, the government filed an indictment against Mr. Williams. *See* ECF Dkt. 1. In that indictment, the government charged Mr. Williams with conspiracy to commit carjacking (Count One), carjacking (Count Two), conspiracy to use, carry, and brandish a firearm (Count Three), using, carrying, and brandishing a firearm (Count Four), and possession of a firearm and ammunition by a prohibited person (Count Five). *Id.* At the time that the government filed its indictment, it was under the impression that Mr. Williams had participated in a carjacking, and that he did so while under the terms of supervised release.

Mr. Williams came before (former) Magistrate Judge Adam Abelson for an initial appearance on June 17, 2024. *See* ECF Dkt. 9. At his initial appearance, Mr. Williams consented to detention but preserved the right to a detention hearing in the future. *See* ECF Dkt. 15.

Thereafter, Mr. Williams appeared before Magistrate Judge J. Mark Coulson on April 17, 2025, for a detention hearing. *See* ECF Dkt. 53. At that detention hearing, the government argued that "Turon Williams and his co defendants carjacked a Mercedes with machine guns in the middle of downtown Baltimore," and so in "this particular case the defendant ticks nearly

1

every rebuttal presumption box at section (f)(1) of the Bail Reform Act." *See* Audio of Detention Hearing (Apr. 17, 2025) (herein "Audio), 9:42:02 – 9:42:57.[1] Throughout its presentation to the Court, the government elaborated on the theme that "this case involves a crime of violence, a serious offense carrying a life imprisonment, the defendant qualifies as a career offender, and this case includes the possession of firearms." *Id.* at 9:42:47 – 9:42:52. The government further explained that when officers located and sought to arrest Mr. Williams and his co-defendants, the driver of the car they were in accelerated its engine and crashed into a pole. *Id.* at 9:44:11. Nevertheless, the government had to also concede that Mr. Williams remained seated in the rear seat of the vehicle until police officers removed him from it. *Id.* at 9:44:20.[2]

In defense of Mr. Williams, undersigned counsel drew the Court's attention to 18 U.S.C. § 3142(j) indicating that nothing should limit the Court's ability to consider the presumption of innocence. He argued that Mr. Williams was "a Baltimore guy," and so did not present a flight risk, combined with his record of appearance. *See* Audio at 9:49:24 and 9:49:50 – 9:50:28 (counsel explained that his only failure to appears related in one instance to an attorney seeking a continuance, and so, causing the court to call the case on a date Mr. Williams was not present; and another related to a traffic case called while Mr. Williams sat in jail). He also presented Mr. Williams' grandmother to the Court, who was in attendance and had offered to share her living

---

[1] Federal courts have in reviewing a magistrate's order considered the audio recording of a detention hearing as part of the record. *See United States v. Mire*, Case No. 1:11-cr-16-WTL-KPF-1, 2011 U.S. Dist. LEXIS 37761, *3 (S.D. In. Apr. 6, 2011)).

[2] At the hearing, the government contended that Mr. Williams "attempted to flee the vehicle but that the door did not open." The government's discovery shows that Mr. Williams remained in the vehicle and cooperated with officers in his removal from it. Government's Discovery 2, BWC, 231101359_Armed_Carjacking_unit_block_South_St_. (01:45 – 10:30). Thereafter, he sat calmly on a curb until he was transported to a police station later that evening. *Id.*

quarters, serve as a third-party custodian, and feed him throughout the end of his case. *Id.* at 9:50:30 – 9:51:13.

Thereafter, undersigned asked the Court to consider what pretrial detention for Mr. Williams might mean, based on charges that he was clearly intent on taking to trial. He explained:

> Nobody knows more than Mr. Williams that you can be accused of the most atrocious things in life, you can exercise your right to due process, you can call the citizens, your peers into that jury box, and after the government presents is case, you can hear two words: Not Guilty. He also knows that you can spend two years in custody waiting to hear those words, and that you could lose two years of your life, waiting for that moment and waiting for that time. He's committed to exercising his trial rights in this case…

*Id.* at 9:51:13 – 9:51:49. Noting scheduling difficulties with two codefendants, undersigned counsel informed the Court that Mr. Williams would likely overserve his time on a pending violation of supervised release before the indicted charges proceeded to trial. *Id.* at 9:52:45 – 9:53:15. He also surveyed the government's evidence and concluded that the government was "overplaying its hand," in this case. *Id.* at 9:53:33 – 9:54:15.

At the conclusion of this presentation, the Court agreed with undersigned counsel that Mr. Williams was not a flight risk. *Id.* at 9:59:07. But the Court still detained Mr. Williams based on the Court's finding that Mr. Williams posed a danger to the community that could not be mitigated by the imposition of pretrial release conditions. In its ruling, the Court relied on the government's proffer of "extensive surveillance video both pre allegations, during the alleged carjacking, and post the alleged carjacking that captures you and others at all three stages…" *Id.* at 10:01:00.

Since that detention hearing, further investigation revealed that the evidence presented at the detention hearing was inaccurate as to the alleged carjacking. On December 11, 2025, the government informed Judge Chasanow that it intends to proceed solely on Count Five.

## ARGUMENT

The Bail Reform Act permits a detained defendant to ask the Court to reopen a detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Newly developed facts support reopening Mr. Williams's detention hearing. Mainly, the government has dropped its contention that Mr. Williams participated in an armed carjacking.

During the previous detention hearing, the government rested heavily on the purported strength of its evidence as to a carjacking and crime of violence—events it lacks evidence of. In similar situations, mainly involving suppressed evidence, courts have reconsidered their orders for detention. *See United States v. Vongphachanh*, 1:19-CR-96-HAB, 2021 U.S. Dist. LEXIS 122152, *2 (N.D. In. Jun. 30, 2021) (reconsidering a former detention order and ruling in favor of a defendant's release because a magistrate's rationale for detention on July 15, 2020, had "dramatically turned" by July 15, 2021, when the district court suppressed the government's main evidence and created a situation where its case-in-chief went from strong to relatively weak). In making a reassessment, courts have also considered that felon-in-possession crimes are not crimes of violence for purposes of considering whether individuals should be detained under the Bail Reform Act, and so, carry no presumption of detention. *Id.* at *4 n.1.

Removing the carjacking and crime of violence from the factors on which Magistrate Judge Coulson relied to determine that Mr. Williams should be detained pending trial, shows the same "dramatically turned" circumstances that the *Vongphachanh* court observed. After having served sufficient time in pretrial custody to satisfy any future violation of his supervised release conditions, Mr. Williams remains in custody pending trial on a firearms case. Moreover, the

government's evidence on that case is weak—as it seeks to charge Mr. Williams for possession of a firearm located in a vehicle occupied by two other co-defendants. As the Court has already determined that Mr. Williams is not a flight risk, the only consideration that remains is his dangerousness to the community. In light of the government's concession that he has not participated in a carjacking, the calculus on that matter has changed.

**CONCLUSION**

In its current posture, this case is vastly different to the one previously presented to the Court. Mr. Williams therefore asks the Court to schedule a reopened detention hearing.

Respectfully submitted,

James Wyda
Federal Public Defender
for the District of Maryland

___/s/_____
Andrew R. Szekely #16407
Gabriel Reyes
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-3976
Email: andrew_szekely@fd.org
　　　　gabriel_reyes@fd.org